IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK NOBLE, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:10-CV-648 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| GENCO I, INC., | : | Magistrate Judge Mark R. Abel |
| | : | |
| Defendant. | : | |

OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss. *Motion*, Doc. No. 7. Plaintiff Mark Noble, a former employee of Defendant Genco I Inc., brings this retaliation and discrimination action *pro se* against Defendant for its interference with his search for employment. He seeks damages and injunctive relief.

For the reasons that follow, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

I.  BACKGROUND

Plaintiff was an employee of Defendant from April 2007 until October 2007. In April of 2008, Plaintiff filed a lawsuit in this court alleging that he was harassed and discriminated against on the basis of race by Genco Supply Chain Solutions and Sears Holding Corporation in violation of federal and state civil rights statutes. *Complaint*, Doc. No. 4, Case No. 08-cv-360. Plaintiff voluntarily dismissed defendant Sears Holding Corporation on July 8, 2008. *Notice*, Doc. No. 16, Case No. 08-cv-360. Plaintiff and defendant Genco Supply Chain Solutions filed a Stipulation of Dismissal With Prejudice on July 23, 2008 indicating that the parties had entered

into a settlement agreement and closing the case. *Stipulation*, Doc. No. 18, Case No. 08-cv-360.

In the summer of 2009, Plaintiff was seeking employment. He claims that a number of prospective employers with whom he interviewed, including Wal-Mart, Luxio, Kroger's, and Target, told him that they had received a negative reference from Defendant. Specifically, Plaintiff was informed that Defendant's employees told the prospective employers not to hire Plaintiff because he was litigious, he was accused of sexually harassing a female employee, he was threatening to their staff, and he was a felon. Plaintiff avers that all of these statements are false. Plaintiff contacted Defendant about this information and spoke by telephone to a person named Don; Plaintiff never heard back from Don or any other representatives of Defendant.

Plaintiff filed a complaint with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC") on August 29, 2009. The EEOC terminated the action on May 17, 2010 and notified Plaintiff of his right to sue in federal or state court within 90 days of the termination.

In September of 2009, Plaintiff received a letter from Monica L. Lurlano, Vice President Teammate Service at Genco Supply Chain Solution, stating that Plaintiff's claims for retaliation and interference with employment are governed by the terms of the Settlement Agreement entered into by the Parties on July 23, 2008.

Plaintiff filed a complaint before this Court on July 22, 2010. *Complaint*, Doc. No. 4. Magistrate Judge Abel granted Plaintiff leave to file an amended complaint on October 7, 2010. *Order*, Doc. No. 15. In his Amended Complaint, Plaintiff brings the following claims against Defendant: (1) retaliation and racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. (Count I); (2) racial discrimination in violation of the Civil

Rights Act of 1866, 42 U.S.C. § 1981 (Count II); (3) racial discrimination in violation of Chapter 4112 of the Ohio Civil Rights Act, Ohio Rev. Code Ann. § 4112.02 (Count III); and (4) retaliation in violation of Ohio public policy law (Count IV). *Complaint*, Doc. No. 16. Plaintiff requests as relief compensatory damages in the amount of $50,000 per count, non-economic damages in the amount of $50,000 per count, punitive damages in the amount of $100,000 per count, injunctive relief, and attorneys fees and costs.

Defendant filed its Motion to Dismiss the complaint in its entirety pursuant to Federal Rule 12(b)(6) on August 24, 2010. *Motion*, Doc. No. 7. Plaintiff, proceeding *pro se*, has filed a response, *Response*, Doc. No. 11, and the matter is now ripe for decision.

## II.  STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Although a plaintiff need not plead detailed facts, the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), 'a…complaint must contain either direct or inferential allegations respecting all the material

elements to sustain a recovery under *some* viable legal theory.'" *Klusty v. Taco Bell Corp.*, 909 F.Supp. 516, 520 (S.D. Ohio, 1995) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). Additionally, the Court must accept as true all factual allegations contained in the complaint, and the complaint must be construed in a light most favorable to the party opposing the motion to dismiss. *Davis H. Elliot Co. v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975).

### III. LAW AND ANALYSIS

Defendant argues that the Court must dismiss Plaintiff's claims for racial discrimination in Counts I - III because they consist of no more than "labels and conclusions." Defendant further argues that the Court must dismiss the claims for retaliation in Counts I - III because Plaintiff has failed to plead an element of his *prima facie* case. Finally, Defendant argues that the Court must dismiss Count IV because Plaintiff's complaint does not plead a viable legal theory. The Court will address each argument in turn.

#### A. RACIAL DISCRIMINATION

Defendant argues that Plaintiff has not pled sufficient allegations to support a claim for racial discrimination under state or federal law. The Court agrees.

There are two principal methods of proving employment discrimination under Title VII: disparate treatment or disparate impact. *Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005); *Int'l Broth. Of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977) (recognizing disparate treatment and disparate impact methods of proof). In a race-based disparate treatment claim, a plaintiff must show that the employer treats some employees less favorably than others on the basis of race. *Hughley v. General Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995). Proof of

discriminatory motive is critical to disparate treatment claims. *Id*. at 1270.  In comparison, to recover for racial discrimination under a disparate impact theory, a plaintiff must show that an employer's "facially neutral employment practices . . . have a disproportionately negative effect" on a particular race and cannot be justified by business necessity.  *Id*.  To demonstrate disparate impact, a plaintiff must present "statistical evidence of systematic discrimination."  *Id*.

Plaintiff alleges in Count I that he "was disparately treated based on his race" and states claims for racial discrimination in Counts I - III.  Plaintiff's only other allegations regarding racial discrimination concern Defendant's "long documented history of race discrimination complaints" filed by other black employees of the Defendant before Plaintiff became an employee of Defendant.  Plaintiff has pled no facts that Defendant treated him differently than similarly situated white employees or that Defendant has an employment practice with a disproportionate negative impact on a particular race.  Because Plaintiff's claim for racial discrimination in Counts I - III does not contain "direct or inferential allegations respecting all the material elements" of a racial discrimination claim, *Klusty*, 909 F.Supp at 436, and is based on no more than mere "labels and conclusions," *Twombly*, 550 U.S. at 555, the Court **GRANTS** Defendant's Motion with respect to these claims.

## B.  RETALIATION

Title VII prohibits employers from retaliating against an employee who "has opposed any practice made an unlawful employment practice by" Title VII.[1]  42 U.S.C. § 2000e-3.  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that: (1) he

---

[1] Cases for retaliation under Title VII, Chapter 4112, and § 1981 have the same evidentiary standards, burdens of proof, and elements.  *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).  Analysis of Title VII law is therefore applicable to claims under all of these statutes.

engaged in a legally protected activity; (2) that the defendant knew of this exercise of his protected rights; (3) that the defendant consequently took adverse action against the plaintiff; and (4) that there is a causal connection between the protected activity and the employment action. *Strouss v. Mich. Dep't of Corrections*, 250 F.3d 336, 342 (6th Cir. 2001). Defendant challenges the sufficiency of Plaintiff's complaint with respect to the third prong.

Title VII protects both current and former employees from retaliatory action. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). Providing a negative job reference for a former employee seeking employment elsewhere can constitute an adverse employment action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003) (giving plaintiff a "poor employment reference" constituted "taking employment action[] adverse to him"). An action is "adverse" if it "'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Miller v. City of Canton*, 319 Fed. Appx. 411, 420 (6th Cir. 2009) (quoting *Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53, 57 (2006)).

Defendant contends that a Plaintiff's *prima facie* retaliation claim must additionally allege that the negative employment reference conveyed false information in order for that reference to constitute an "adverse action;" because Plaintiff's complaint does not allege that the substance of the negative reference was false, it must be dismissed. Defendant's arguments fail for two reasons.

First, for support of the proposition that a plaintiff bringing a retaliation claim based on a negative reference must establish that the reference was false, Defendant cites only to cases from other jurisdictions. *See Matthews v. Wisconsin Energy Corp. Inc.*, 534 F.3d 547, 559 (7th Cir. 2008); *Szymanski v. County of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178-79 (2d Cir. 2005); *Roach v. Rockingham County Bd. of*

*Educ.*, 2007 WL 4570337, *9 (M.D.N.C. 2007).  Despite the Sixth Circuit's long recognition of the availability of a retaliation claim for a former employee who receives a negative job reference, *see Abbot*, 348 F.3d at 543, the Defendant has not pointed to any Sixth Circuit case adopting the false reference rule, nor is this Court aware of any.

Second, Plaintiff's amended complaint, unlike his initial complaint, does allege that the content of the negative references was false.  When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward.  *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306-07 (6th Cir. 2000) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)).  Thus, even if the Court were inclined to adopt the rule that a reference must be false to be adverse, the amended complaint would have sufficiently pled the elements of a retaliation claim to defeat a motion to dismiss.  The Defendant's Motion to Dismiss Counts I - III is, accordingly, **DENIED**.

### C.  PUBLIC POLICY

Defendant argues that Plaintiff's claim for retaliation in contravention of public policy must be dismissed because he was not terminated or disciplined by Defendant.  The Court agrees.

Although employment relationships in Ohio are generally governed by the common-law doctrine of employment at will, Ohio law recognizes "a cause of action in tort for wrongful discharge in violation of public policy."  *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529 (Ohio 2002) (plurality opinion).  The Ohio Supreme Court has defined this tort with four elements:

> 1.  That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element)[;]

>    2.  That dismissing employees under certain circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element)[;]
>
>    3.  That plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element)[; and]
>
>    4.  The employed lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Collins v. Rizkana*, 652 N.E.2d 653, 657–58 (Ohio 1995); *Wiles*, 773 N.E.2d at 529–30.  The clarity and jeopardy elements are questions of law, while the causation and overriding justification elements are questions of fact.  *Collins*, 652 N.E.2d at 658; *Wiles*, 773 N.E.2d at 530.

  The claim for damages based upon the violation of public policy developed as a safety-valve to the employment-at-will doctrine, which allowed an employer to terminate an employee "for any cause, no cause or even in gross or reckless disregard of any employee's rights." *Collins*, 652 N.E.2d at 656.  Recognizing "that the general employment-at-will rule is a harsh outgrowth of outdated and rustic notions," *id*. at 657, Ohio adopted the public policy exception to the employment-at-will doctrine in *Greeley v. Miami Valley Maint. Contractors*, 551 N.E.2d 981, 986 (Ohio 1990) ("We believe that the time has come for Ohio to join the great number of states which recognize a public policy exception to the employment-at-will doctrine.").  The court in *Greeley* summarized the effect of its ruling in the following way: "henceforth, the right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy." *Id*. at 987.  This history suggests that the cause of action based upon a violation of public policy

is centrally concerned with limiting the discretion of an at-will employer; hence the "public policy exception to the employment-at-will doctrine" would be inapplicable to a claim based upon conduct not committed by an employer towards an employee-at-will.  *Cf. Haynes v. Zoological Soc'y*, 652 N.E.2d 948, 951 (Ohio 1995) (concluding that union member could not bring public policy tort because "in order for an employee to bring a cause of action pursuant to *Greeley* . . . that employee must have been an employee at will").

Ohio courts have essentially limited the public policy doctrine to claims for wrongful discharge or discipline of an employee at will.  For instance, courts have refused to extend the doctrine to a claim for failure to hire, *Peck v. Elyria Foundry Co*., 347 Fed. Appx. 139, 148 (6th Cir. 2009) ("[A] 'review of Ohio law finds no case extending the public policy tort to claims involving a wrongful faire to hire or retaliation.'") (quoting *Bools v. Gen. Elec. Co.*, 70 F.Supp.2d 829, 832 (S.D. Ohio 1999) (dismissing public policy claim alleging that employer declined to rehire former employee in retaliation or on the basis of former employee's age)), a claim for unequal pay, *Stange v. Deloitte & Touche,* 2006 WL 871242, *5 (S.D.Ohio 2006), and a claim for failure to transfer, *Curry v. Consolidated Coal Co*., 2005 WL 1159410, *2 (S.D.Ohio 2005).  Mindful that "Ohio appellate courts seem hesitant about expanding the exception to the doctrine of employment-at-will beyond claims from wrongful termination," *Bools*, 70 F.Supp.2d at 832, this Court concludes that Plaintiff "can prove no set of facts that would entitle him to relief" on his claim for retaliation in violation of public policy based upon the negative references, *Zhen-Hua Gao v. Jenifer*, 185 F.3d 548, 552 (6th Cir. 1999) (citing *American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 355 (6th Cir. 1990)).  Defendant's Motion to Dismiss Count IV is, accordingly, **GRANTED**.

## IV.  CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss, *Motion*, Doc. No. 7, is **GRANTED** in part and **DENIED** in part.  The Motion is **GRANTED** with respect to Plaintiff's claims for racial discrimination in Courts I - III.  Plaintiff's claims for racial discrimination are hereby **DISMISSED**.  The Motion is **GRANTED** with respect to Count IV of the Plaintiff's amended complaint.  Count IV is hereby **DISMISSED**.  The Motion is **DENIED** with respect to the retaliation claims of Counts I - III of the Plaintiff's amended complaint.

           **IT IS SO ORDERED.**

                                         s/Algenon L. Marbley
                                         **Algenon L. Marbley**
                                         **United States District Court Judge**

**DATED: December 30, 2010**